UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PATRICIA COFRANCESCO, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:13-cv-00977-WWE |
| | : | |
| JOSEPH MATURO and | : | |
| TOWN OF EAST HAVEN, | : | |
|     Defendants. | : | |

### MEMORANDUM OF DECISION ON DEFENDANT MATURO'S MOTION TO DISMISS

Plaintiff Patricia CoFrancesco filed this action against defendants Joseph Maturo and the Town of East Haven, Connecticut, alleging gender discrimination (Count I), retaliation (Count II), and deprivation of civil rights (Count IV) against both defendants; and incitement to commit discrimination (Count III), libel per se (Count V), and libel by innuendo (Count VI) against defendant Maturo. All of CoFrancesco's claims relate to her former employment as Town Attorney. Maturo has moved to dismiss Counts V and VI. For the following reasons, Maturo's motion will be denied.

### BACKGROUND

The following background is taken from the allegations of the complaint, which are considered to be true for purposes of ruling on a motion to dismiss.

In November 2007, Maturo, the incumbent mayor of the Town of East Haven, was defeated by April Capone Almon. Cofrancesco was appointed as Town Attorney for the Almon administration in November 2007. She served until November 2011, when Almon was defeated in that mayoral election by Maturo.

While Mayor Almon was in office, a pre-existing investigation of the civil rights abuses

of Maturo's administration by the United States Department of Justice culminated in indictments of police officers and the prosecution of both civil and criminal federal cases against the East Haven Police Department and its Chief, Leonard Gallo, an appointee of Maturo.

At all times during her tenure as Town Attorney, CoFrancesco implemented a policy and supervised a practice of full and complete cooperation with the federal authorities.  She fully disclosed and exchanged information with the DOJ in order to help facilitate their investigation with a view towards cleaning up the East Haven Police Department and protecting the citizens of East Haven from the discrimination they had experienced in the past.

Upon his election victory in November 2011, Maturo lifted the suspension of Leonard Gallo and reinstated him as Police Chief, an action that signaled Maturo's defiance of the investigation into the police department.  That action, coupled with a remark made to a Hispanic television reporter that he intended to respond to the concerns of Hispanics in his community by going home to "eat a taco," evidenced Maturo's contempt for the efforts of CoFrancesco to make the East Haven Police Department accountable for its civil rights abuses.

On December 5, 2011, the East Haven Board of Police Commissioners voted to retain CoFrancesco as counsel to its commission based on their respect for her independence and for the work and advice she had given during the pendency of the federal investigations.  The Board of Police Commissioners further desired that its counsel not be beholden to Maturo.

On December 6, 2011, Maturo, acting through his appointed Town Attorney, Joseph Zullo, ordered CoFrancesco to stop representing the East Haven Board of Police Commissioners. CoFrancesco refused to obey for several months.

In April 2012, Maturo summarily took away the foreclosure files CoFrancesco was by

practice and precedent allowed to handle on behalf of the Town.

After repeated threats against her livelihood by agents of Maturo, and after additional threats against the Board of Police Commissioners, CoFrancesco was compelled to withdraw from her representation of the Board.

On February 2, 2012, Maturo, through his zoning enforcement officer, ordered CoFrancesco to "cease and desist" in the maintenance of a legal sign on her property in East Haven that expressed criticism of Maturo. The sign stated: "Taco Joe's gotta go."

On February 5, 2012, while addressing the vandalism of CoFrancesco's sign, Maturo published defamatory statements concerning CoFrancesco to the New Haven Register, a newspaper of general circulation in Southern Connecticut.

In the New Haven newspaper article, Maturo identified CoFrancesco to the public as someone who "has hurt the town enough," stating: "I couldn't care less what Patty CoFrancesco does. She has hurt the town enough." These statements were published to third persons through the circulation of the newspaper throughout the Town of East Haven and adjacent towns. CoFrancesco alleges that these statements were communications tending to harm the reputation of CoFrancesco so as to lower her in the estimation of the community. CoFrancesco contends that (1) the statements in context were referring not only to her sign but to her tenure as Town Attorney, rendering the statements libelous per se as injuring the plaintiff in her profession and calling as an attorney, and (2) the statements were made with malice in fact, as they were published in an improper or unjustifiable manner, or with improper or unjustifiable motives.

Further, CoFrancesco contends that the innuendo of Maturo's statements was that her performance as Town Attorney was the cause of East Haven's public relations and police department problems.

3

**DISCUSSION**

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Counts V and VI allege that Maturo is liable for libel per se and libel by innuendo, respectively, for his February 5, 2012 statements to the New Haven Register. Under Connecticut law, a victim of libel per se is presumed to be injured and is entitled to general damages without proof of actual damages because the statement is facially defamatory. Battista v. United Illuminating Co., 10 Conn. App. 486, 491-92 (1987). "Two of the general classes of libel which, it is generally recognized, are actionable per se are (1) libels charging crimes and (2) libels which injure a man in his profession and calling." Proto v. Bridgeport Herald Corp., 136 Conn. 557, 565-66 (1950); Mercer v. Cosley, 110 Conn. App. 283, 294-95 (2008). Libel by innuendo may result merely from the tone or slant of a publication, or from a failure to present the whole picture. Strada v. Connecticut Newspapers, Inc., 193 Conn. 313, 322 (1984).

**Fact vs. Opinion**

Libelous assertions are often characterized as either fact or opinion. Expressions of pure opinion enjoy absolute privilege. Restatement (Second), Torts § 566.

> Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact.

Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974).

Maturo argues that his statements, standing alone, clearly set forth his *opinions* as to CoFrancesco as they relate to her relationship with the Town and her past tenure as Town Attorney. However, "[i]f the facts that are criticized or commented upon are not stated or known, however, then fair comment is no defense. The reason for this distinction is as follows: an opinion must be based upon facts; if the facts are neither known nor stated, then a defamatory opinion implies that there are undisclosed defamatory facts which justify the opinion." Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 118 (1982).

Here, Maturo stated: "I couldn't care less what Patty CoFrancesco does. She has hurt the town enough." His statements do not disclose the factual basis for his criticism of CoFrancesco. Indeed, CoFrancesco maintains that Maturo's statements implied the existence of undisclosed defamatory facts, i.e., that she was responsible for the consequences of the civil rights wrongdoing of Maturo's appointed police leadership, and that but for her past participation as town counsel, there would have been no problems with the federal authorities.

Maturo's statements are best categorized as expressions of "mixed opinion" because they were not based on disclosed facts. See Goodrich, 188 Conn. at 118-19. "Expressions of mixed opinion, however, are privileged only where made (1) by members of the press or news media;

5

(2) about matters of public interest or concern; and (3) without knowingly or recklessly distorting the facts upon which they are based." Id.  As Maturo is not a member of the press or news media, his statements were not privileged.

**Public Figure Status**

Maturo contends that CoFrancesco is a public figure.  He argues that by virtue of CoFrancesco's status as Town Attorney, his statements were privileged and protected by the First Amendment.

"[A] public figure, as well as a public official, cannot recover damages for a defamatory falsehood, absent clear and convincing proof that the defamatory falsehood was published or broadcast with actual malice, that is, with knowledge that the statement was false or with reckless disregard for its falsity." Miles v. Perry, 11 Conn. App. 584, 588 (1987).  Maturo contends that CoFrancesco cannot show that he acted with such requisite "actual malice."

Not all public employees are "public officials." Hutchinson v. Proxmire, 443 U.S. 111, n. 8 (1979).  "[T]he public official designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." Rosenblatt v. Baer, 383 U.S. 75, 85 (1966).  Those who attain public official status have assumed special prominence in society. Miles, 11 Conn. App. at 591.

> Hypothetically, it may be possible for someone to become a public figure through no purposeful action of his own, but the instances of truly involuntary public figures must be exceedingly rare. For the most part those who attain this status have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment.

6

Gertz, 418 U.S. at 345.

A plaintiff's legal status is heavily dependent on the underlying factual record. CoFrancesco's former title of Town Attorney, alone, does not conclusively establish her legal status.  See Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 210 (1st Cir. 2006) (finding the trial court's decision on the public figure issue premature *at the summary judgment stage* regarding a defamation action by an assistant state's attorney).  Moreover, CoFrancesco alleges in both Counts V and VI that Maturo acted with malice.  Accepting all well-pleaded allegations as true and drawing all reasonable inferences in favor of pleader, the Court will not dismiss CoFrancesco's libel claims at this stage.

## CONCLUSION

For the foregoing reasons, Maturo's motion to dismiss [Doc. # 28] is DENIED.

Dated this 22nd day of May, at Bridgeport, Connecticut.

                                                    /s/Warren W. Eginton_____
                                              WARREN W. EGINTON
                                              SENIOR UNITED STATES DISTRICT JUDGE